UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

Case No. 9:19-cv-81308

| | |
|---|---|
| FLOREUS DELVA, <br> CARLIX MOLTIME, <br> ELVIRE ALEXANDRE PHILISTIN, <br> MAGALINE JOASSAINT, <br> BETTY PIERRE, <br> BOLIVARD JULIEN <br> BORDGE DESRUISSEAUX <br><br> Plaintiffs, <br><br> vs. <br><br> J. ALDERMAN FARMS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **COMPLAINT**

## **PRELIMINARY STATEMENT**

1. This is an action by seven (7) farmworkers formerly employed by Defendant J. Alderman Farms, Inc. Plaintiffs Carlix Moltime, Floreus Delva, Elvire Alexandre Philistin, Magaline Joassaint, and Betty Pierre were briefly employed by the Defendant to harvest vegetables in the fall of 2018 in the Palm Beach County area. Plaintiffs Bordge Desruisseaux and Bolivard Julien were employed by the Defendant to harvest vegetables during the winter of 2018 through the spring of 2019 in the Palm Beach County area.

2. The Plaintiffs bring this action to secure and vindicate rights afforded to them by the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§1801, *et. seq*.

1

3. Defendant failed to comply with several of the AWPA's provisions for the protection of migrant and seasonal farmworkers. In violation of its working arrangement with the workers, Defendant unlawfully dismissed the Plaintiffs from their employment as vegetable harvesters to replace them with temporary foreign workers imported under the H-2A guestworker program. By engaging in these unlawful acts, Defendant avoided being forced to displace and repatriate some of its H-2A workers, who the company had recruited and transported to the U.S. at considerable cost. Defendant did not follow its own employee disciplinary action procedures when terminating the Plaintiffs Carlix Moltime, Floreus Delva, Elvire Alexandre Philistin, Magaline Joassaint, and Betty Pierre. Defendant furloughed Plaintiffs Bordge Desruisseaux and Bolivard Julien, while retaining most or all of its H-2A workers. The Plaintiffs seek actual and statutory damages for the Defendant's violations of law.

## JURISDICTION

4. This action arises under the AWPA, 29 U.S.C. §§1801, *et. seq*. This Court has jurisdiction pursuant to 29 U.S.C. §1854(a), 28 U.S.C. §1331 and 28 U.S.C. §1337.

## VENUE

5. Venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c), and 29 U.S.C. §1854(a).

## PARTIES

6. Plaintiff Carlix Moltime ("Moltime") is a citizen of the United States who maintains his home in Belle Glade, Palm Beach County, Florida. During the period he was employed harvesting vegetables in south Florida as a member of Defendant's labor crew, Moltime was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §1802(10)(A),

and its attendant regulations, 29 C.F.R. §500.20(r), in that he was employed near Belle Glade in agricultural employment of a seasonal nature harvesting vegetables.

7. Plaintiff Floreus Delva ("Delva") is a lawful permanent resident of the United States who maintains his home in Belle Glade, Palm Beach County, Florida. During the period he was employed harvesting vegetables in south Florida as a member of Defendant's labor crew, Delva was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §1802(10)(A), and its attendant regulations, 29 C.F.R. §500.20(r), in that he was employed near Belle Glade in agricultural employment of a seasonal nature harvesting vegetables.

8. Plaintiff Elvire Alexandre Philistin ("Philistin") is a lawful permanent resident of the United States who maintains her home in Belle Glade, Palm Beach County, Florida. During the period she was employed harvesting vegetables in South Florida as a member of Defendant's labor crew, Philistin was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §1802(10)(A), and its attendant regulations, 29 C.F.R. §500.20(r), in that she was employed near Belle Glade in agricultural employment of a seasonal nature harvesting vegetables.

9. Plaintiff Magaline Joassaint ("Joassaint") is a lawful permanent resident of the United States who maintains her home in Belle Glade, Palm Beach County, Florida. During the period she was employed harvesting vegetables in south Florida as a member of Defendant's labor crew, Joassaint was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §1802(10)(A), and its attendant regulations, 29 C.F.R. §500.20(r), in that she was employed near Belle Glade in agricultural employment of a seasonal nature harvesting vegetables.

10. Plaintiff Betty Pierre ("Pierre") is a U.S. worker within the meaning of 20 C.F.R. §655.103(b). She maintains her home in Belle Glade, Palm Beach County, Florida. During the period she was employed harvesting vegetables in south Florida as a member of Defendant's labor

crew, Pierre was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §1802(10)(A), and its attendant regulations, 29 C.F.R. §500.20(r), in that she was employed near Belle Glade in agricultural employment of a seasonal nature harvesting vegetables.

11.     Plaintiff Bolivard Julien ("Julien") is a lawful permanent resident of the United States who maintains his home in Belle Glade, Palm Beach County, Florida.  During the period he was employed harvesting vegetables in south Florida as a member of Defendant's labor crew, Julien was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §1802(10)(A), and its attendant regulations, 29 C.F.R. §500.20(r), in that he was employed near Belle Glade in agricultural employment of a seasonal nature harvesting vegetables.

12.     Plaintiff Bordge Desruisseaux ("Desruisseaux") is a lawful permanent resident of the United States who maintains his home in Belle Glade, Palm Beach County, Florida.  During the period he was employed harvesting vegetables in south Florida as a member of Defendant's labor crew, Desruisseaux was a seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §1802(10)(A), and its attendant regulations, 29 C.F.R. §500.20(r), in that he was employed near Belle Glade in agricultural employment of a seasonal nature harvesting vegetables.

13.     Defendant J. Alderman Farms, Inc. is a closely-held farming corporation based in Palm Beach County.  At all times relevant to this action, J. Alderman Farms, Inc. was an agricultural employer within the meaning of the AWPA, 29 U.S.C. §1802(2), in that it operated a farm and employed seasonal or migrant agricultural workers.

## STATUTORY AND REGULATORY STRUCTURE

14.     An agricultural employer in the United States may import aliens to perform labor of a temporary nature if the U.S. Department of Labor certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens

will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. §655.100. Aliens admitted in this fashion are commonly referred to as "H-2A workers."

15. Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the U.S. Department of Labor (hereinafter "DOL"). 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. 20 C.F.R. § 655.121(a)(1). Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly-situated U.S. workers. 20 C.F.R. §§ 655.120, 655.122 and 655.135.

16. Among other things, the H-2A regulations are designed to implement the statutory preference for hiring U.S. workers for jobs that become available in the United States. Prospective H-2A employers must offer U.S. workers benefits, wages and working conditions at least equal to those it offers or provides H-2A workers and may not impose any restrictions or obligations on U.S. workers that it does not also impose on H-2A workers. 20 C.F.R. § 655.122(a). From the time the foreign workers depart for the employer's place of employment, H-2A employers must provide employment to any qualified, eligible U.S. worker who applies to the employer until 50 percent of the period of the work contract has elapsed. 20 C.F.R. § 655.135(d).

17. The H-2A employer's clearance order serves as an employment contract between the agricultural employer and H-2A workers as well as domestic farmworkers hired under the clearance order. 20 C.F.R. § 655.122(q). The clearance order also constitutes a working arrangement between the H-2A employer and any U.S. workers hired pursuant to its terms within the meaning of the AWPA, 29 U.S.C. §1832(c).

18. In or about July, 2018, Defendant submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration seeking 15 workers for employment from September 1, 2018 through April 15, 2019.

19. As part of the temporary labor certification application described in Paragraph 18, Defendant submitted a clearance order which contained a certification that the order described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii).

20. In or about September, 2018, Defendant submitted a second temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration seeking 24 workers for the 2018-19 harvest season for employment from November 13, 2018 through May 25, 2019.

21. As part of the second temporary labor certification application described in Paragraph 20, Defendant submitted a clearance order which contained a certification that the order described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii).

22. Defendant's clearance orders described in Paragraphs 18 and 20 explicitly and implicitly incorporated the H-2A regulations at 20 C.F.R. §655 Subpart B.  20 C.F.R. § 655.135.

23. The United States Department of Labor ("DOL") accepted Defendant's first temporary labor certification application and employment contract submitted on behalf of Defendant as described in Paragraph 18.  The clearance order was circulated to local job service offices in an effort to recruit U.S. workers to fill the positions offered.  On July 17, 2018,  DOL's National Processing Center in Chicago granted Defendant's first temporary labor certification

6

application in full and certified the admission of 15 foreign workers to fill the positions described in the clearance order from September 1, 2018 through April 15, 2019.

24. DOL accepted Defendant's second temporary labor certification application and employment contract submitted on behalf of Defendant as described in Paragraph 20. The clearance order was circulated to local job service offices in an effort to recruit U.S. workers to fill the positions offered. On September 26, 2018, DOL's National Processing Center in Chicago granted Defendant's second temporary labor certification application in full and certified the admission of 24 foreign workers to fill the positions described in the clearance order from November 13, 2018 through May 25, 2019.

25. The Customs and Immigration Services of the Department of Homeland Security in turn issued H-2A visas to fill the manpower needs described in both of Defendant's clearance orders.

## **COUNT I**

### **(Migrant and Seasonal Agricultural Worker Protection Act)**

26. This count sets forth a claim by the Plaintiffs Moltime, Delva, Philistin, Joassaint, and Pierre for damages with respect to Defendant's violations of the AWPA and its attendant regulations during the 2018-2019 vegetable harvesting season in South Florida.

27. In or about October, 2018, Defendant hired the Plaintiffs for employment in the positions described in its clearance orders (Paragraphs 18 and 20).

28. Defendant briefly employed the Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre, compensating them on both hourly and piece-rate bases.

29. Defendants terminated without cause the employment of the Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre shortly after they started work.

30. Defendant did not follow its own employee disciplinary action procedures in its termination of the Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre.

31. Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre did not violate the work rules included in Defendant's clearance orders. Some or all of Defendant's H-2A employees engaged in the same or similar conduct as Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre, yet were not terminated or disciplined.

32. Defendant failed to offer the Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre employment for a total number of work hours equal to or at least three-quarters of the workdays of the contract period. Defendant failed to pay Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre the amounts they would have earned had they in fact worked the guaranteed number of days.

33. Defendant's' actions described in Paragraphs 29 through 32 violated without justification its working arrangement with Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre, in violation of the AWPA, 29 U.S.C. § 1832(c).

34. Defendant's violations of the APWA as set forth in this count occurred as part of its regular business practices and were the natural consequences of its conscious and deliberate actions and were thereby intentional within the meaning of the AWPA, 29 U.S.C. § 1854 (c)(1).

35. As a result of Defendant's violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs Moltime, Delva, Philistin, Joassaint and Pierre have suffered damages including the loss of employment opportunities.

## **COUNT II**

### **(Migrant and Seasonal Agricultural Worker Protection Act)**

36. This count sets forth a claim by the Plaintiffs Julien and Desruisseaux for damages with respect to Defendant's violations of the AWPA and its attendant regulations during the 2018-2019 vegetable harvesting season in South Florida.

37. In or about November, 2018, Defendant hired Plaintiff Julien for employment in the position described in its clearance orders (Paragraphs 18 and 20).

38. In or about December, 2018, Defendant hired Plaintiff Desruisseaux for employment in the position described in its clearance orders (Paragraphs 18 and 20).

39. Defendant employed the Plaintiffs Julien and Desruisseaux, compensating them on both hourly and piece-rate bases.

40. Defendant furloughed Plaintiffs Julien and Desruisseaux in or around April of 2019, by informing them that there was not enough work, but promised to contact Plaintiffs Julien and Desruisseaux when more work became available.

41. Few if any of Defendant's H-2A workers were involuntarily terminated nor furloughed during the 2018-2019 vegetable harvesting season.

42. Defendant continued to have additional work available until the end of the 2018-2019 vegetable harvesting season.

43. Defendant never contacted Plaintiffs Julien and Desruisseaux to return to work after they were furloughed while additional work was still available.

44. Defendant failed to offer Plaintiffs Julien and Desruisseaux employment for a total number of work hours equal to or at least three-quarters of the workdays of the contract

period.  Defendant failed to pay Plaintiffs Julien and Desruisseaux the amounts they would have earned had they in fact worked the guaranteed number of days.

45. By continuing to offer employment to its H-2A workers after it furloughed Plaintiffs Julien and Desruisseaux, Defendant violated without justification its working arrangement promise that U.S. workers would be offered benefits, wages and working conditions at least equal to those Defendant offered and provided to its H-2A workers.

46. Defendant's actions described in Paragraphs 40 through 45 violated without justification its working arrangement with Plaintiffs Julien and Desruisseaux, in violation of the AWPA, 29 U.S.C. § 1832(c).

47. Defendant's violations of the APWA as set forth in this count occurred as part of its regular business practices and were the natural consequences of its conscious and deliberate actions and were thereby intentional within the meaning of the AWPA, 29 U.S.C. § 1854 (c)(1).

48. As a result of Defendant's violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs Julien and Desruisseaux have suffered damages, including the loss of employment opportunities.

## Count III

### (Breach of Contract)

49. This count sets forth a claim for damages by the Plaintiffs for Defendant's breach of its employment contracts with the workers, as embodied in the clearance orders described in Paragraphs 18 and 20.

50. The terms and conditions of employment contained in Defendant's clearance orders constituted the employment contracts between Defendant and the Plaintiffs, the terms of which

were supplied by federal regulations at 20 C.F.R. §§ 655.120 and 655.122 and 20 C.F.R. § 653.501(c)(3).

51. Defendant breached its employment contracts with the Plaintiffs by providing terms and conditions of employment that were materially different from those in the clearance orders by failing to provide them employment as promised in the clearance orders, not complying with its own disciplinary procedures, by imposing restrictions or obligations on the Plaintiffs that it did not impose on its H-2A employees, and failing to offer U.S. workers benefits, wages and working conditions at least equal to those it offered and provided to its H-2A workers

52. As a result of Defendant's breaches of its employment contract obligations as described in this Count, the Plaintiffs have sustained substantial injuries.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that this Court enter an Order:

a. Awarding the Plaintiffs their actual damages, or statutory damages in the amount of Five Hundred Dollars ($500.00) each, whichever is higher, for each violation of the AWPA set out in Count I and Count II;

b. Awarding the Plaintiffs their actual and consequential damages for Defendant's contractual breaches as set out in Count III;

c. Awarding the Plaintiffs the costs of this action;

d. Awarding the Plaintiffs all interest due from the date of the infraction, and

e. Granting any and all further relief as this Court deems just and appropriate.

**DATED:** September 24, 2019

Respectfully submitted,

*/s/ Tia Huntley*
**Tia S. Huntley, Esq.**
Florida Bar No.: 123847
Florida Rural Legal Services, Inc.
3210 Cleveland Avenue, Suite 101
Fort Myers, Florida 33901
Telephone: (239) 334-4554, Ext. 4119
Facsimile: (239) 334-3042
E-mail: tia.huntley@frls.org

*Attorney for Plaintiffs C. Moltime, F. Delva, E. Philistin, M. Joassaint, B. Desruisseaux and B. Julien*

*/s/ Vanessa Coe*
**Vanessa Coe, Esq.**
Florida Bar No.: 96788
Legal Aid Society of Palm Beach County, Inc.
423 Fern Street, Suite 200
West Palm Beach, FL 33401
Telephone: 561-655-8944
Facsimile: 561-655-5269
E-mail: vcoe@legalaidpbc.org

*Attorney for Plaintiff B. Pierre*